UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DICKEY'S BARBECUE          )
RESTAURANTS, INC.,         )
                                 )
        Plaintiff,           )          CIVIL ACTION NO.
                                 )
VS.                         )          3:12-CV-5119-G
                               )
JOSEPH J. MATHIEU,       )
                                 )
        Defendant.       )

## MEMORANDUM OPINION AND ORDER

Before the court is defendant's motion to dismiss or, in the alternative, to stay litigation and to compel mediation/arbitration (docket entry 16).  For the reasons set forth below, the motion to dismiss is denied, and the motion to stay litigation and compel mediation/arbitration is granted as to the claims for declaratory judgment, breach of contract, and fraudulent inducement, and denied as to the claim for injunctive relief.

# I.  BACKGROUND

The plaintiff, Dickey's Barbecue Restaurants, Inc. ("Dickey's"), franchises a large chain of barbecue restaurants under the name "Dickey's Barbecue Pit." Plaintiff's First Amended Complaint ("Complaint") ¶¶ 6-10 (docket entry 8). Dickey's is a Texas corporation with its principal place of business in Texas.  *Id.* ¶ 1.

On March 4, 2009, Dickey's entered into a franchise agreement with the defendant, Joseph J. Mathieu ("Mathieu"), to operate a Dickey's Barbecue Pit franchise location ("the restaurant") in Las Cruces, New Mexico.  *Id.* ¶ 12; *see generally* Dickey's Barbecue Restaurants, Inc. Franchise Agreement ("Franchise Agreement") (Exhibit 1 at docket entry 8-1).  Mathieu is a resident of New Mexico.  Complaint ¶ 2.

After opening the restaurant, Mathieu failed to comply with the terms of the Franchise Agreement.  *Id.* ¶ 27.  Among other violations, Mathieu allegedly did not purchase the appropriate food products from approved suppliers, did not comply with food safety standards, did not follow proper operating procedures, and did not pay the required royalties.  *Id.*

On July 24, 2012, Dickey's sent Mathieu a non-compliance notice, informing him that he was in breach of his obligation to purchase food from approved suppliers.  *Id.* ¶ 28; *see generally* Non-Compliance Notice (Exhibit 2 at docket entry 8-1). Mathieu failed to cure the breach, and Dickey's sent him a notice of default on

August 7, 2012.  Complaint ¶ 29; *see generally* Notice of Default (Exhibit 3 at docket entry 8-1).  On August 30, 2012, Mathieu informed Dickey's of his intent to cease operation of the restaurant.  Complaint ¶ 30.  Dickey's notified him that ceasing to operate the restaurant would be a breach of the Franchise Agreement.  *Id.* ¶ 31; *see generally* Notice of Non-compliance (Exhibit 4 at docket entry 8-1).

Dickey's and Mathieu then began negotiations to locate a buyer for the restaurant.  Complaint ¶ 32.  In October of 2012, Mathieu stopped making royalty and marketing fund payments.  *Id.* ¶ 33.  On October 12, 2012, and November 1, 2012 respectively, Dickey's sent Mathieu another non-compliance notice and notice of default for his failure to pay royalty and marketing fund fees and failure to purchase food from approved suppliers.  *Id.* ¶¶ 33-34; *see generally* Notice of non-compliance (Exhibit 5 at docket entry 8-1); Notice of Default and Termination (Exhibit 6 at docket entry 8-1).

On November 7, 2012, Dickey's and Mathieu entered into an agreement in which Mathieu would continue operating the restaurant in accordance with the Franchise Agreement until December 31, 2012 ("the closing date"), at which point Mathieu would sell the restaurant to Dickey's.  Complaint ¶ 36; *see generally* Termination Agreement and General Release ("the Termination Agreement") (Exhibit 7 at docket entry 8-1).  Dickey's waived past due marketing fees and all fees accruing

after the date of the Termination Agreement so that Mathieu would be able to continue operating the restaurant until the closing date.  Complaint ¶ 36.

On December 5, 2012, a Dickey's representative inspected the restaurant and found that the restaurant was still operating in breach of the Franchise Agreement. *Id.* ¶ 37.  Dickey's immediately sent Mathieu another notice of default. *Id.*; *see generally* Notice of Default (Exhibit 8 at docket entry 8-1).  Mathieu failed to cure his default.  Complaint ¶ 38.  He informed Dickey's that he would cease operation on December 31, 2012, and that he did not intend to proceed with the sale of the restaurant.  *Id.*

On December 14, 2012, Dickey's filed this suit against Mathieu, asserting claims for (1) declaratory judgment, (2) injunctive relief, (3) breach of contract, and (4) fraudulent inducement.  *See generally* Plaintiff's Original Complaint (docket entry 1).

On January 31, 2013, Mathieu moved to dismiss Dickey's claims or, in the alternative, to stay litigation and to compel mediation/arbitration ("Motion to Compel") and a supporting brief ("Motion to Compel Brief").  *See generally* Motion to Compel (docket entry 16); Motion to Compel Brief (docket entry 17).  Mathieu argues that the Franchise Agreement requires the use of alternate dispute resolution prior to litigation.  Motion to Compel Brief ¶ 9.  Since the parties have not engaged in mediation or arbitration, Mathieu insists that the conditions precedent to the

lawsuit have not been satisfied and that the case must be dismissed. *Id.* ¶¶ 9, 22. In the alternative, Mathieu urges the court to stay litigation and compel mediation/arbitration. *Id.* ¶ 23.

## II. ANALYSIS

### A. Arbitrability

Mathieu argues that the decision about whether to arbitrate Dickey's claims should be made by an arbitrator, not by the court. Defendant's Reply to Plaintiff's Response to Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, to Stay Litigation and to Compel Mediation/Arbitration ("Reply to Plaintiff's Response") ¶ 12 (docket entry 25). The Supreme Court has noted that the question of "arbitrability" -- whether the parties have agreed to arbitrate a particular dispute -- should be decided by the court, not an arbitrator, unless the parties "clearly and unmistakably provide otherwise." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 582-83 (1960)); see also *Pennzoil Exploration & Production Company v. Ramco Energy Limited*, 139 F.3d 1061, 1066 (5th Cir. 1998) ("[T]he question of whether a party can be compelled to arbitrate, as well as the question of what issues a party can be compelled to arbitrate, is an issue for the court rather than the arbitrator to decide."). Courts "hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that

- 5 -

power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

In this case, the Franchise Agreement does not contain a clear indication that the parties intended for an arbitrator to decide the issue of arbitrability. As a result, the court will determine whether or not the parties were bound to arbitrate and what issues must be arbitrated based on the language of the contract. *AT & T Technologies*, 475 U.S. at 649 (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-47 (1964)).

B. <u>Applicable Law</u>

The Federal Arbitration Act ("FAA") applies to any written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. § 2. The Supreme Court has held that "involving" should be read expansively to apply to any transaction affecting interstate commerce. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995). In this case, the contract at issue between Dickey's, a Texas corporation, and Mathieu, a citizen of New Mexico, surely affects interstate commerce.

However, Article 27.3 of the Franchise Agreement contains a choice-of-law provision: "[w]ith respect to all Disputes, this Agreement shall be interpreted and

construed under Texas law."  In *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, the Supreme Court concluded that while the FAA does preempt state anti-arbitration laws, the FAA does not prohibit parties from arbitrating under state law rules rather than the rules of the FAA.  489 U.S. 468, 478-79 (1989).  The FAA ensures that private agreements to arbitrate are enforceable, and requires due regard for the federal policy favoring arbitration, but it does not demand that arbitration occur under any particular set of procedural rules.  *Id.* at 475-76.

Much like the federal policy, there is "a strong presumption in Texas public policy favoring arbitration and upholding the parties' intentions."  *ASW Allstate Painting & Construction Company, Inc. v. Lexington Insurance Company*, 188 F.3d 307, 310 (5th Cir. 1999).  As a result, the Fifth Circuit has concluded that courts can apply Texas law and the Texas General Arbitration Act ("TGAA") without undermining the policy of the FAA.  *Id.* (citing *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 247-48 (5th Cir.1998)).

Since the parties agreed to apply Texas law to their disputes, the court will apply Texas law and the TGAA.

C.  Legal Standard

In determining whether arbitration is proper under the Franchise Agreement, the court uses "ordinary state-law principles that govern the formation of contracts."  *First Options*, 514 U.S. at 944.  The court's interpretative function must be carried

out with appropriate deference to the public policies of both the state of Texas and the federal government that favor arbitration over litigation and require arbitration clauses to be construed in favor of arbitration.  See *Southland Corporation v. Keating*, 465 U.S. 1, 10-11 (1984); *Allstate Painting*, 188 F.3d at 311.  The court may not deny Mathieu's motion to compel "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *United Steelworkers*, 363 U.S. at 582-83.

Despite judicial deference to arbitration, a party may not be required to arbitrate a dispute that it did not agree to arbitrate, see *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990), and the controversy must come within the contract's arbitration provision before the court can order arbitration.  See *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 950 S.W.2d 375, 377 (Tex. App.-- Tyler 1996, writ dism'd w.o.j.).

Under Texas law,[1] in order to compel arbitration, a party must establish:

(1) the existence of a valid agreement to arbitrate and (2) that the claims asserted by

the party attempting to compel arbitration are within the scope of the arbitration

agreement.  *Allstate Painting*, 188 F.3d at 311 (citing *Celebrity*, 950 S.W.2d at 377).[2]

---

[1]       The Texas General Arbitration Act, in pertinent part, provides:
§ 171.021 Proceeding to Compel Arbitration

> (a) A court shall order the parties to arbitrate
> on application of a party showing:
>
>> (1) an agreement to arbitrate;
>> and
>>
>> (2) the opposing party's refusal
>> to arbitrate.
>
> (b) If a party opposing an application made
> under Subsection (a) denies the existence of
> the agreement, the court shall summarily
> determine that issue.  The court shall order
> the arbitration if it finds for the party that
> made the application.  If the court does not
> find for that party, the court shall deny the
> application.
>
> (c) An order compelling arbitration must
> include a stay of any proceeding subject to
> Section 171.025.

TEX. CIV. PRAC. & REM. CODE ANN. § 171.021 (West 2011).

[2]       The analysis under the FAA is substantially similar:

> Courts perform a two-step inquiry to
> determine whether parties should be

(continued...)

- 9 -

If both prongs are met, "the trial court has no discretion but to compel arbitration and stay its proceedings pending arbitration." *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.--San Antonio 2000, pet. dism'd) (citing *Dallas Cardiology Associates, P.A. v. Mallick*, 978 S.W.2d 209, 212 (Tex. App.--Texarkana 1998, pet. denied)); *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.025, 172.174 (West 2011).

The party seeking arbitration bears the burden to establish that a valid arbitration agreement exists. *Henry*, 18 S.W.3d at 688-89. If a valid arbitration agreement exists, then the burden shifts to the opposing party to establish that the dispute falls outside of the scope of the arbitration agreement or that the agreement is unenforceable for some other reason, such as fraud or unconscionability. *Id.* The court focuses on the factual allegations of the complaint, rather than the legal causes of action asserted, to determine whether a claim falls within the scope of an

---

[2](...continued)
> compelled to arbitrate a dispute. First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable. When considering the first question, there are two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.

*Will-Drill Resources, Inc. v. Samson Resources Company*, 352 F.3d 211, 214 (5th Cir. 2003) (internal citations and quotations omitted).

arbitration agreement. *Prudential Securities Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995) (per curiam).

In this case, Dickey's does not argue that the arbitration agreement is invalid; rather, Dickey's argues that the claims at issue in this case fall within an exception to the arbitration agreement and are therefore outside of its scope. *See generally* Plaintiff Dickey's Barbecue Restaurants, Inc.'s Opposition to Defendant's "Motion to Dismiss Plaintiff's First Amended Complaint, or, in the Alternative, Motion to Stay Litigation and Compel Mediation/Arbitration" ("Plaintiff's Opposition") (docket entry 24). Dickey's therefore bears the burden of convincing the court that its claims fall outside of the arbitration agreement.

### D. Scope of the Arbitration Agreement

The court looks to the Franchise Agreement to determine whether Dickey's claims fall within the scope of the arbitration agreement. "In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." *Italian Cowboy Partners, Limited v. Prudential Insurance Company of America*, 341 S.W.3d 323, 333 (Tex. 2011) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). To determine the intent of the parties, the court "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Davidson*, 128 S.W.3d at 229 (citing *Universal C.I.T. Credit Corporation v. Daniel*, 150 Tex. 513, 243

- 11 -

S.W.2d 154, 158 (1951)).  "No single provision taken alone will be given controlling

effect; rather, all the provisions must be considered with reference to the whole

instrument."  *Id.* (citing *Myers v. Gulf Coast Minerals Management. Corporation*, 361

S.W.2d 193, 196 (Tex. 1962); *Citizens National Bank v. Texas & Pacific Railway

Company*, 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941)).  If a contract can be given

a definite legal meaning, it is unambiguous.  *Id.* (citing *Columbia Gas Transmission

Corporation v. New Ulm Gas, Limited*, 940 S.W.2d 587, 589 (Tex. 1996)).  A contract

is ambiguous if it is susceptible to two or more *reasonable* interpretations.  *Id.*  The

court will "construe contracts 'from a utilitarian standpoint bearing in mind the

particular business activity sought to be served' and 'will avoid when possible and

proper a construction which is unreasonable, inequitable, and oppressive.'"  *Frost

National Bank v. L & F Distributors, Limited*, 165 S.W.3d 310, 312 (Tex. 2005)

(quoting *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)).

Article 27 of the Franchise Agreement contains three provisions that are

central to the dispute before the court.  Article 27.1 of the Franchise Agreement

provides, in relevant part, that "[t]he parties agree to submit any claim, controversy,

or dispute arising out of or relating to this Agreement (and attachments) or the

relationship created by this Agreement to non-binding mediation prior to filing such

claim, controversy or dispute in a court."

Article 27.2 further provides that those disputes not resolved through mediation will be submitted to binding arbitration:

> Subject only to Article 27.1 and 26.3, all disputes, controversies, claims, causes of action and/or alleged breaches or failures to perform (collectively, "Disputes") arising between the parties in connection with, or arising from, or with respect to (1) any provision of this Agreement or any other agreement related to this Agreement between the parties; (2) the relationship of the parties; (3) the validity of this Agreement or any other agreement between the parties, or any provision thereof; or (4) any specification, standard or operating procedure relating to the establishment or operation of the franchised business, which shall not be resolved through mediation in accordance with paragraph 26.1 shall be submitted for binding arbitration to the office of the AAA located in Dallas, Texas, on demand of either party.

Dickey's argues that its claims are properly before this court based on Article 27.3, which on its face provides exceptions to the requirements to mediate/arbitrate found in Articles 27.1 and 27.2:

> Notwithstanding the foregoing, Dickey's may bring an action (1) for monies owed, (2) for injunctive relief or other extraordinary relief, or (3) involving the possession or disposition of, or other relief relating to real property in a court having jurisdiction and without first submitting such action to mediation or arbitration.

Dickey's insists that its claims fall within the exceptions for monies owed and injunctive relief. *See generally* Plaintiff's Opposition.

Mathieu argues that the arbitration clause in the Franchise Agreement is "broad" and therefore must "'embrace all disputes between the parties having a

significant relationship to the contract regardless of the label attached to the

dispute.'"  Reply to Plaintiff's Response ¶ 11 (quoting *Pennzoil Exploration*, 139 F.3d

at 1067).  The arbitration clause in this case is correctly characterized as "broad."  *See*

Franchise Agreement Article 27.2 (requiring that all disputes "arising between the

parties in connection with, or arising from, or with respect to" the Franchise

Agreement be subject to arbitration); see also *Baudoin v. Mid-Louisiana Anesthesia*

*Consultants, Inc.*, 306 F. App'x 188, 192 (5th Cir. 2009) (per curiam) (concluding that

arbitration clauses that cover disputes "in connection with" an agreement are broad).

However, broad arbitration clauses only create a particularly strong presumption in

favor of arbitration "[i]n the absence of any express provision excluding a particular

grievance from arbitration."  *United Steelworkers*, 363 U.S. at 584-85.  Arbitration is a

"matter of contract," and "the parties' intentions control."  *Pennzoil Exploration*, 139

F.3d at 1064-65.  In this case, Article 27.3 expressly excludes particular grievances

from arbitration; Mathieu may not sidestep this provision merely because the

arbitration clause is broad.

　　　　Mathieu further argues that the exceptions to mediation/arbitration in Article

27.3 do not apply in this case.  Motion to Compel Brief ¶ 10.  Specifically, Mathieu

points out that Article 27.2 of the Franchise Agreement states that it is "[s]ubject

only to Article 27.1 and 26.3."  *Id.* ¶ 11.  As a result, Mathieu maintains, the

exceptions in Article 27.3 do not apply to the arbitration provisions in Article 27.2.

Although Mathieu's point is clear, the court cannot accept this interpretation. Under Mathieu's interpretation, Article 27.3, which provides for exceptions from arbitration, would not apply to the arbitration clause at all.  Article 27.3 would be rendered meaningless as it applies to arbitration.  Furthermore, Article 27.3 begins with the phrase "[n]otwitstanding the foregoing"; this language makes little sense if it does not apply to the immediately preceding section.  Since the court cannot conclude that the parties truly intended otherwise, the exceptions in Article 27.3 must apply to the arbitration agreement in Article 27.2.

Mathieu also argues that the phrase "relating to real property" in Article 27.3 applies to all three exceptions to mediation/arbitration.  In other words, Mathieu argues that the exceptions for suits for monies owed and for injunctive relief only apply if related to real property.  The court agrees with Dickey's, Plaintiff's Opposition ¶ 17, that this construction is unreasonable.  The exceptions for monies owed and for injunctive relief are logical and self-contained without applying the caveat that they relate to real property.  By contrast, the third exception, "involving the possession or disposition of, or other relief" is meaningless if not "relating to real property."  "Bearing in mind that our primary goal is to ascertain the intent of the parties when they entered into the agreement," *Frost National*, 165 S.W.3d at 313, the only reasonable construction of this Article is that "relating to real property" was intended solely as part of the third exception.

- 15 -

Since the exceptions to arbitration in Article 27.3 are applicable, the court will consider whether Dickey's claims for (1) declaratory judgment, (2) injunctive relief, (3) breach of contract, and (4) fraudulent inducement fall within those exceptions.

1. *Declaratory Judgment*

Dickey's first asks the court for a declaratory judgment that Mathieu "materially violated the Franchise Agreement and is in default pursuant to the terms of the Franchise Agreement."  Complaint ¶ 42.  Dickey's argues that this claim is exempt from mediation/arbitration because it is a claim for "monies owed."  *See* Plaintiff's Opposition ¶¶ 2-3, 19-20.  Presumably, Dickey's argument is based on its contention that a declaratory judgment would entitle it "to liquidated or actual damages as well as interest, attorneys' fees and costs of suit."  Complaint ¶ 42.

A declaratory judgment is, by definition, not a claim for monies owed.  A declaratory judgment is a "binding adjudication that establishes the rights and other legal relations of the parties *without providing for or ordering enforcement*."  *Black's Law Dictionary* (9th ed. 2009) (emphasis added), *available at* Westlaw BLACKS.  A claim for declaratory judgment is not a claim for monies owed merely because it could lead to money damages in a different proceeding.

Moreover, "monies owed" and "damages" are not interchangeable concepts.  "Monies owed" generally refers to payments due under the text of a contract or other written instrument.  See, *e.g.*, *Brackens v. Brackens*, 226 F. App'x 331, 332 (5th Cir.

2007) ("monies owed" under a will); *Bethlehem Steel Corporation v. Avondale Shipyards, Inc.*, 951 F.2d 92, 92 (5th Cir. 1992) ("monies owed" under a contract to perform ship repairs); *Stine v. Stewart*, 80 S.W.3d 586, 590 (Tex. 2002) ("monies owed" under an Agreement Incident to Divorce).  If every action for damages could be recast as an action for "monies owed," almost nothing would fall under the broad arbitration clause in the Franchise Agreement.  As Mathieu points out, Dickey's interpretation would allow any dispute to be reduced to a claim for monies owed.  Motion to Compel Brief ¶ 29.  The Franchise Agreement explicitly contemplates that "all disputes, controversies, claims, causes of action and/or alleged breaches or failures to perform . . . [regarding] any provision of this Agreement" will be subject to binding arbitration.  Franchise Agreement Article 27.2.  The court cannot conclude that the parties truly intended for such sweeping language to be so limited in application, especially considering that the arbitration clause directly references potential breaches of the Franchise Agreement.  Dickey's cannot escape the wide breadth of its own arbitration agreement merely because it would be more convenient to litigate the claims in this particular case.  Dickey's factual allegations relate to Mathieu's violation of "system standards" and provisions of the Franchise Agreement, not Mathieu's failure to pay monies owed.  Complaint ¶ 41.  Dickey's claim for declaratory judgment must be submitted to mediation/arbitration.

2.  *Injunctive Relief*

Dickey's next asks the court for an injunction to prevent Mathieu from "displaying or utilizing the Dickey's name or Marks and from operating any barbeque style restaurant in the subject area of Las Cruces, New Mexico."  Complaint ¶ 49. Article 27.3 of the Franchise Agreement explicitly exempts actions for injunctive relief from the mediation/arbitration requirements.

Mathieu argues that the request for injunctive relief is moot because Mathieu is no longer operating the restaurant or using Dickey's marks.  Motion to Compel Brief ¶ 19.  Dickey's recognizes that Mathieu has ceased operation of the restaurant. Complaint ¶ 39.  However, "[a] discontinuance of wrongful conduct does not alone warrant denial of injunctive relief, for the appropriateness of granting an injunction against now-discontinued acts depends upon the bona fides of the expressed intent to comply, the effectiveness of the discontinuance, and, in some cases, the character of past violations." *Petersen v. Talisman Sugar Corporation*, 478 F.2d 73, 78 (5th Cir. 1973) (citing *United States v. W. T. Grant Company*, 345 U.S. 629 (1953)).  Given that "[t]he purpose of an injunction is to prevent future violations," the court's power to grant an injunction does not depend on past wrongful conduct.  *W.T. Grant*, 345 U.S. at 633 (citing *Swift & Company v. United States*, 276 U.S. 311, 326 (1928)).

Mathieu further submits in an affidavit that he has no intention of operating a barbeque restaurant in Las Cruces in the future.  Motion to Compel Brief ¶ 19.

Dickey's objects to the court's consideration of Mathieu's affidavit.  Plaintiff's

Opposition ¶ 7.  Texas law is clear that "[t]he trial court may summarily decide

whether to compel arbitration on the basis of affidavits, pleadings, discovery, and

stipulations." *Jack B. Anglin Company, Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex.

1992).  However, even considering the affidavit, the request for injunctive relief is not

moot.  Mathieu's mere disclaimer of intention to revive the wrongful conduct does

not moot Dickey's request.  *W.T. Grant*, 345 U.S. at 633.  Although Mathieu's

disclaimer would be relevant to determine whether an injunction is appropriate, the

court cannot weigh the merits of Dickey's claims at this stage.  *AT & T Technologies*,

475 U.S. at 649-50; *id*.  As a result, Dickey's request for injunctive relief is not moot

and cannot be submitted to mediation/arbitration.

### 3. *Breach of Contract*

In its third cause of action, Dickey's alleges that Mathieu breached a number

of terms of the Franchise Agreement:  he ceased operation of the restaurant and failed

to operate it for the agreed upon term, failed to make payments, failed to meet food

safety standards, and failed to purchase and sell approved products.  Complaint

¶¶ 51-58.  Dickey's alleges that it has been harmed by Mathieu's breaches of contract

and is entitled to money damages.  *Id.* ¶¶ 59-60.

Mathieu argues that Dickey's claims regarding his failure to meet safety

standards and failure to purchase and sell approved goods are moot because he is no

longer operating the restaurant.  Motion to Compel Brief ¶ 20.  Dickey's claims are only moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). The fact that Mathieu is no longer operating the restaurant does not mean that his past breaches of contract did not damage Dickey's, nor does it mean that Dickey's will be unable to recover from Mathieu.  Consequently, these claims are not moot.

Dickey's argues that its breach of contract claims are exempt from mediation/arbitration as claims for "monies owed."  Plaintiff's Opposition ¶¶ 2-3, 19-20.  Article 27.2 of the Franchise Agreement subjects to arbitration all "alleged breaches or failures to perform . . . with respect to (1) any provision of this Agreement . . . [and] (4) any specification, standard or operating procedure relating to the establishment or operation of the franchised business."  Again, the language of the Franchise Agreement explicitly contemplates that breaches will be submitted to arbitration.  This language would be rendered meaningless if each breach of contract claim fell under the exception for "monies owed."  As mentioned, there must be a distinction between actions for "monies owed" under the contract and actions for "damages."  Otherwise, the exception for "monies owed" would swallow the broad mediation/arbitration provisions.

Dickey's breach of contract claims relating to food safety standards and failure to purchase and sell approved products are not claims for monies owed.  They are not

claims for payment due to Dickey's under the contract; rather, they are claims for

damages stemming from breaches of "operating procedures" imposed by the Franchise

Agreement.  Dickey's claim related to Mathieu's premature termination of the

franchise is likewise not a claim for monies owed; Dickey's is seeking damages for

"loss of future revenue," not unpaid monies.  Complaint ¶ 51.  Moreover, Dickey's

complains that Mathieu stopped operating the restaurant on December 31, 2012 --

yet Dickey's agreed in the Termination Agreement that Mathieu would have no

obligation to operate the restaurant after December 31, 2012.  *Id.* ¶¶ 39, 51-52, 57;

Termination Agreement ¶ 5.

Dickey's breach of contract claim relating to Mathieu's failure to make

payments falls within the "monies owed" exception to mediation/arbitration.

However, "Texas law favors the joint resolution of multiple claims to prevent multiple

determinations of the same matter." *Jack B. Anglin*, 842 S.W.2d at 271 (citing *Valero*

*Energy Corporation v. Wagner & Brown*, 777 S.W.2d 564, 567 (Tex. App.--El Paso

1989, writ denied)).  As a result, claims that are factually intertwined with arbitrable

claims must be arbitrated.  *Id.*  In this case, each breach of contract claim will depend

on shared factual information regarding the expectations set by the Franchise

Agreement, how those expectations were modified by the Termination Agreement,

and Mathieu's performance relative to those expectations.  The court cannot conclude

with positive assurance that Dickey's breach of contract claim regarding past due

payments is not at least factually intertwined with arbitrable claims.  See *Prudential Securities*, 909 S.W.2d at 900.  Therefore, Dickey's breach of contract claims must be sent to mediation/arbitration.

### 4. *Fraudulent Inducement*

Finally, Dickey's alleges that Mathieu made knowingly false representations regarding his intent to sell the restaurant to Dickey's.  Complaint ¶ 62.  Dickey's insists that Mathieu fraudulently induced Dickey's to sign the Termination Agreement in order to receive a release from liability for lost future royalties and past due and accruing fees.  Complaint ¶ 63.  Dickey's asserts that it was damaged by Mathieu's fraudulent inducement and is entitled to damages as a result.  Complaint ¶¶ 65-66.  Again, Dickey's attempts to cast this action as one for "monies owed." Plaintiff's Opposition ¶¶ 2-3, 19-20.  Mathieu's broken promise that he would sell the restaurant to Dickey's may have damaged Dickey's, but it did not deprive Dickey's of "monies owed."  With respect to the fee waivers, Dickey's forfeited its right to those funds when it signed the Termination Agreement.  *See* Termination Agreement ¶ 2. Dickey's may attempt to recover those funds by challenging the validity of the Termination Agreement, but that challenge is based on allegations of fraud, not unpaid monies.  Dickey's fraudulent inducement claim is subject to mediation/arbitration.

### E. Stay or Dismissal

Mathieu argues that Dickey's has not satisfied all "conditions precedent" to this lawsuit because it has not attempted to mediate/arbitrate the dispute. Motion to Compel Brief ¶ 22. As a result, Mathieu asks the court to dismiss Dickey's action. *Id.* However, dismissal is only appropriate when *all* of the issues in a case must be submitted to arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (citations omitted). Since this court cannot submit Dickey's request for injunctive relief to mediation/arbitration, dismissal is inappropriate in this case. As a result, the court must order a stay of proceedings as to the arbitrable claims for declaratory judgment, breach of contract, and fraudulent inducement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021 (West 2011) ("An order compelling arbitration must include a stay of any proceeding subject to Section 171.025."); *Id.* § 171.025(a) ("The court shall stay a proceeding that involves an issue subject to arbitration if an order for arbitration or an application for that order is made under this subchapter."). The stay will not apply to the claim for injunctive relief because it is not subject to arbitration. *Id.* § 171.025 (b) ("The stay applies only to the issue subject to arbitration if that issue is severable from the remainder of the proceeding.").

### III.  CONCLUSION

For the reasons stated above, the motion to dismiss is **DENIED**, and the motion to stay litigation and compel mediation/arbitration is **GRANTED** as to the

claims for declaratory judgment, breach of contract, and fraudulent inducement, and **DENIED** as to the claim for injunctive relief.

Within thirty days of this date, counsel for the parties shall file a joint report on the status of mediation/arbitration of the plaintiff's claims for declaratory judgment, breach of contract, and fraudulent inducement.

**SO ORDERED**.

September 18, 2013.

_A. Joe Fish_

A. JOE FISH
**Senior United States District Judge**